## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHNNY McLEAN,
    *Plaintiff*,

    v.                                                    No. 3:21-cv-1541 (JAM)

COOK *et al.*,
    *Defendants*.

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Johnny McLean is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against several prison officials. McLean alleges that he caught COVID-19 because of the defendants' deliberate indifference to his health and safety. I will allow his claims to go forward against one of the four defendants but will dismiss the claims against the other three defendants for lack of factual allegations to plausibly show their personal involvement in the denial of McLean's constitutional rights.

### BACKGROUND

McLean complains about his treatment at three prisons. The first is the Radgowski Correctional Center. He arrived there in May 2020. When he arrived, he says, COVID-19 was rampant.[1] And he claims that the warden, Martin, failed to protect him and the other inmates from the disease: "[s]leeping areas were not being clean[ed]"; inmates were packed together and not given masks; asymptomatic infected inmates were not isolated; and McLean was forced to stay in a room that had not been cleaned since a sick inmate had left it.[2]

---

[1] Doc. #1 at 3 (¶¶ 9–10).
[2] *Id.* at 3–4 (¶¶ 11–12).

McLean alleges that for over a month, he "begged" Martin to be transferred or at least for a mask.[3] But he "was ignored completely."[4] In fact, he claims, the warden "removed all cleaning supplies from the housing units," failed to clean the units or stock them with sanitizer and toilet paper, and insisted that "covid is only a common cold."[5] Plus, Martin allegedly failed to have new inmates screened for the disease.[6] And finally, McLean claims, the warden threatened him with segregation every time he complained about these issues.[7]

Much of this continued, McLean alleges, when in June 2020 he was moved down the block to the Corrigan Correctional Institution.[8] Martin was Corrigan's warden too. And again, according to McLean, Martin refused to protect him from COVID-19. For example, the warden allegedly denied him cleaning supplies to disinfect his cell, failed to screen new inmates for the disease, and refused to let him take a shower for multiple days at a time.[9] And although McLean was originally transferred to Corrigan for health reasons, he claims, Martin threatened to "keep [him] here at Corrigan," the COVID-19 "epicenter," because McLean had "been complaining at Radgowski."[10]

According to McLean, it was not just new inmates who were spreading COVID-19; the staff were too.[11] At both "Radgowski and Corrigan," he alleges, he "observed officers and staff members who stated they had low fevers" and "were positive for covid-19" but who "were still allowed to work" so that they could get overtime pay.[12] In all, he says, over five hundred staff

---

[3] *Id.* at 4, 6 (¶¶ 12, 17).
[4] *Id.* at 4 (¶ 12).
[5] *Id.* at 4 (¶ 13).
[6] *Id.* at 5 (¶ 14).
[7] *Id.* at 6 (¶ 17).
[8] *Id.* at 7 (¶ 18).
[9] *Id.* at 8 (¶ 20).
[10] *Id.* at 7 (¶ 19).
[11] *Id.* at 10 (¶ 26)
[12] *Id.* at 11–12 (¶¶ 27, 30).

members tested positive.[13] McLean claims that Martin, Rollin Cook (then the Commissioner of

the Department of Corrections), and Angel Quiros (then his deputy and Acting Commissioner)

all knew that the staff and inmates were bringing COVID-19 into Connecticut prisons, but that

they still failed to screen anyone.[14]

Because of these failings, McLean claims, he caught COVID-19. For three weeks, he lost

his senses of smell, taste, and hearing in his left ear; had trouble sleeping; and suffered migraines

and memory loss.[15] Still, he says, the medical staff would "only check [his] temperature and

blood pressure" and then send him back to his cell without a COVID-19 test.[16]

In July, McLean was moved to a third prison: the Walker Reception Center. At first, his

symptoms persisted and he was denied a COVID-19 test. But eventually, the symptoms cleared

up, he took a COVID-19 test, and it came back negative.[17]

McLean has sued four defendants over his treatment: Cook, Quiros, Martin, and Cotta,

the warden at Walker. (He claims that Cotta also knew that staff and inmates were bringing

COVID-19 into the prison but did nothing.[18]) He brings claims under the U.S. Constitution for

deliberate indifference and unconstitutional conditions of confinement.[19]

### DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint

against a governmental entity or governmental actors and "identify cognizable claims or dismiss

the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or

fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a

---

[13] *Id.* at 11 (¶ 28).
[14] *Id.* at 10 (¶ 26).
[15] *Id.* at 8 (¶ 21)
[16] *Id.* at 8 (¶ 22).
[17] *Id.* at 9–10 (¶¶ 23–25).
[18] *Id.* at 10 (¶ 26).
[19] *Id.* at 14–15 (¶¶ 33, 35).

defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[20]

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

McLean alleges that the defendants violated his Eight Amendment rights by exposing him to a substantial risk of contracting COVID-19. Although McLean divides his complaint into two claims for "deliberate indifference" and "unconstitutional conditions of confinement," these claims are based on the same facts and are really two ways of phrasing the same Eighth Amendment claim.

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. For purposes of this order, I find that McLean's risk of contracting

---

[20] Unless otherwise noted, this ruling omits all internal quotations, citations, brackets, and other alterations in its quotations and citations of case decisions.

COVID-19 plausibly satisfies the objective prong of the Eighth Amendment standard. It is common knowledge that COVID-19 is a deadly disease that presents a serious threat to inmates. *See Petitpas v. Griffin*, 2020 WL 6826723, at *6 (D. Conn. 2020); *see also Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 349 (S.D.N.Y. 2020) (collecting cases). And McLean alleges that he was forced to stay in close quarters with other inmates, without masks, as COVID-19 spread throughout the prisons. This plausibly put him at an objective risk of serious harm.

McLean has also plausibly alleged the second prong against Martin. To meet this prong, he must allege facts to suggest that Martin acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, he must allege that Martin was aware of a substantial risk that he would be seriously harmed if Martin did not act. *See, e.g.*, *Spavone v. N.Y. Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).  But "[o]fficials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138.

First, McLean alleges that he repeatedly complained to Martin about inadequate cleaning, the lack of COVID-19 screening, and the failure to isolate asymptomatic but infected inmates and staff. In addition, he begged the warden for cleaning supplies, sanitizer, and a mask. In response, McLean alleges, the warden trivialized the disease and even punished him for complaining. These allegations that Martin was aware of the unsafe conditions and did not take steps to protect inmates during an outbreak are sufficient for initial pleading purposes to allege that he acted recklessly despite knowing the substantial risk that COVID-19 posed to McLean

and other inmates. Accordingly, I will allow McLean's Eighth Amendment deliberate indifference claim to proceed against Martin.

As for the remaining defendants, McLean seeks to hold them liable in their supervisory capacity but does not allege enough facts to show their culpable personal involvement with respect to McLean's health and safety. The Second Circuit has ruled that "there is no special rule for supervisory liability," but that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Thus, for deliberate indifference claims, "the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.* at 616. A plaintiff must therefore establish that each defendant acted with deliberate indifference, that is, that each defendant "personally knew of and disregarded an excessive risk to [the plaintiff]'s health or safety." *Id.* at 619.

McLean does not allege facts showing the personal involvement of Cook or Quiros with respect to any of the alleged deficient conditions at Radgowski, Corrigan, and Walker or the risks to McLean in particular. He alleges in conclusory fashion only that they "allowed … correctional officers to work at the correctional facilities without properly being screened for the COVID-19 virus."[21]

McLean also alleges without elaboration that Cook and Quiros "deliberately failed to follow" the settlement agreement "to take specific actions" in *McPherson v. Lamont*, 3:20cv534 (D. Conn.), but does not specify which provisions of the agreements Cook or Quiros deliberately failed to follow or any grounds to conclude that Cook or Quiros were aware that the settlement

---

[21] Doc. #1 at 10 (¶ 26).

agreement was not being followed at the facilities where McLean was located.[22] Moreover, the docket in *McPherson v. Lamont* reflects that the settlement agreement was not approved until July 20, 2020, which is several days after the date that McLean alleges he was transferred to Walker and after most of the acts that he alleges were deliberately indifferent to his health and safety while he was at Radgowski and Corrigan. Accordingly, I will dismiss Cook and Quiros as defendants in this action for lack of facts to plausibly establish their personal involvement in the denial of McLean's rights under the Eighth Amendment.[23]

Nor does McLean state plausible grounds for relief against Cotta who is alleged to have been the warden at Walker. According to the complaint, by the time that McLean was transferred to Walker, he was already recovering, and he does not allege that he caught COVID-19 while at Walker. Although McLean alleges that he did not receive COVID-19 testing when he wanted it at Walker, he does not allege facts to show any personal involvement by Cotta in any denial of testing. Accordingly, I will dismiss Cotta as a defendant in this action for lack of facts to plausibly establish his personal involvement in the denial of McLean's rights under the Eighth Amendment.

Finally, McLean sues all the defendants in both their individual and official capacities. But he seeks only damages. And state officials who are sued in their official capacities are immune under the Eleventh Amendment from federal court lawsuits for money damages. *See Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020). Accordingly, I will allow McLean's action for money damages to proceed against Martin only in Martin's individual capacity.

---

[22] Doc. #1 at 12.
[23] I note that the settlement agreement in *McPherson v. Lamont* includes a class-wide release-of-claims provision that might arguably be interpreted to bar this lawsuit. If so, then any remaining defendants may file a motion to dismiss on such grounds.

CONCLUSION

For the reasons set forth above, the Court enters the following orders:

(1) McLean's Eighth Amendment claims shall proceed against defendant Martin in his individual capacity. The claims against defendants Cook, Quiros, and Cotta are DISMISSED. The Court GRANTS McLean's motion to request activity on this matter (Doc. #8) by means of this initial review order.

(2) If the plaintiff believes there are additional facts the plaintiff can allege that will overcome any of the deficiencies identified in this ruling, then the plaintiff may file a proposed amended complaint within 30 days of this order.

(3) The Clerk shall verify the current work addresses for the named defendants with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses within twenty-one (21) days of this Order, and report to the Court on the status of the waiver requests by not later than the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) All defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) The discovery deadline is extended to six months (180 days) from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial

8

Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(7) The deadline for summary judgment motions is extended to seven months (210 days) from the date of this Order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e. a motion to dismiss or a motion for summary judgment) within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

Dated at New Haven this May 2, 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge